IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:14-cr-135 |
| v. | Hon. T.S. Ellis III |
| MARIO ROJEL URBINA MIRANDA, | Sentencing: December 1, 2023 |
| *Defendant*. | |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, by undersigned counsel, submits its position with respect to the sentencing of the defendant, Mario Rojel Urbina Miranda. The defendant pled guilty to conspiracy to distribute five kilograms or more of cocaine, knowing, intending, and having reasonable cause to believe it would be unlawfully imported into the United States, an offense that carries a 10-year mandatory minimum sentence. The defendant's Guidelines sentencing recommendation is life in prison, based on a total offense level of 43. As part of the defendant's plea agreement, the United States agreed to not recommend a sentence above 312 months. The United States respectfully submits that a sentence of 312 months is sufficient but not greater than necessary to achieve the aims of 18 U.S.C. § 3553.

### FACTUAL BACKGROUND

The defendant was a top-ranking member of the Los Valles Drug Trafficking Organization ("Valles," "Los Valles," "Valle DTO," or "DTO")—one of the most prominent and powerful drug trafficking organizations in Honduras between 2005 and 2014. Since then, the DTO has been disrupted and dismantled, in large part because of the United States' enforcement efforts against it.

During this time period, the vast majority of cocaine entering the United States was produced in Columbia. From Columbia, traffickers moved cocaine to Honduras via private aircraft or boats, and much of the cocaine initially reached Honduras in the Northern Atlantic coastal region because it is remote, has limited infrastructure, and has limited law enforcement and government presence.

The Valle DTO, led by brothers Miguel Arnulfo Valle Valle and Luis Alonso Valle Valle, moved thousands of kilograms of cocaine through Honduras. The DTO used commercial trucks and helicopters to transport loads of cocaine through Honduras to their base of operations in Copan, a region of Honduras that borders Guatemala. From there, the DTO handed-off cocaine to traffickers associated with Mexican DTOs, who moved the cocaine from Guatemala and Mexico into the United States. In addition to making money by transporting cocaine through their country, the Valle DTO also "invested" in cocaine loads—*i.e.* purchased it and resold it to other traffickers—and other times members of the DTO used human smugglers to import cocaine directly into the United States.

In order to further their drug trafficking activities, the Valles paid bribes to police officers so that the DTO could transport cocaine loads through police checkpoints in Honduras without being stopped, searched, and seized. The DTO also bribed officials for information about pending police raids and asset seizures; law enforcement tactics, techniques, and procedures; and individuals suspected of cooperating with law enforcement. The DTO maintained an arsenal of weapons and threatened violence against those who threatened to disrupt their criminal activity.

The investigation began when the United States government began apprehending couriers hired to transport cocaine directly into the United States, as described above. Investigators realized the couriers were sent by the Valle DTO and were able to obtain electronic evidence that provided details about the inner workings of the organization, including communications and

bank records. Based on that and other evidence, law enforcement agents concluded that the defendant was the very top lieutenant to the Valles. Specifically, the defendant was responsible for coordinating the movement of thousands of kilograms of cocaine and the collection of millions of dollars of drug proceeds. He is also understood to be an enforcer for the DTO. The Valles paid the defendant a salary for his efforts, and the defendant was trusted enough to manage other members in the DTO responsible for ensuring safe passage of drugs through Honduras. Outside of Miguel Arnulfo and Luis Alonso, there was *nobody* who had more responsibility than the defendant.

The defendant's statement of facts in this case captures only a small fraction of his criminal conduct, but it clearly illustrates its seriousness. For example, during a two-month period in 2014, the defendant was involved in trafficking the following amounts of cocaine: 513 kilograms on February 9; 200 kilograms on February 12; 517 kilograms on April 13; 743 kilograms on April 22 (ultimately seized); and 201 kilograms on April 27. *See* Statement of Facts ¶¶ 9, 11, 18, 19, 20. During that same time period, the defendant was involved in helping to collect millions of dollars of drug proceeds. *See id.* ¶¶ 10, 16, 17, 21-22. The defendant was also involved in communications about violence against individuals who were disrupting or threatening to disrupt the organization's plans. For example, a message from February 13, 2014 to the defendant from Miguel Arnulfo instructed the defendant how to deal with three individuals in a pickup truck who weren't authorized to be in Valle territory. Arnulfo told the defendant to "stop them" and "put them in the cemetery." Miguel Arnulfo later instructed the defendant to take pictures of them; Miguel Arnulfo later sent the photographs to his brother, Luis Alonso, who responded with the following message: "Have to kill them outside of Florida [a city in the department of Copan, Honduras]." *Id.* ¶¶13-14.

In June 2014, the United States obtained the Superseding Indictment, charging 15 defendants with conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841 and 846 (Count 1), conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 959 and 963 (Count 2), and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count 3).

Since then, the United States government has made substantial efforts to locate and arrest the defendants named in the Superseding Indictment, and the defendant was arrested in Honduras, after many years of living in hiding, on February 18, 2023. He was extradited to the United States and pled guilty to Count 2 of the Superseding Indictment—making him the thirteenth defendant to plead guilty.[1] The chart below summarizes the pleas entered and sentences imposed for the other defendants in this case:

| Defendant | Pled To | Year | Sentence |
| --- | --- | --- | --- |
| Miguel Arnulfo Valle Valle | Count 1 | 2016 | 360 months |
| Luis Alonso Valle Valle | Count 1 | 2016 | 360 months |
| Osman Donay Martinez Guevara | Count 1 | 2019 | 135 months |
| Wilmer Alonzo Carranza Bonilla | Count 2 | 2015 | 132 months |
| Jose Inocente Valle Valle | Count 1 | 2016 | 120 months |
| Delis Abner Martinez Palencia | Count 1 | 2018 | 120 months |
| Aristides Diaz Diaz | Count 1 | 2019 | 96 months |
| Dirlo Nolasco Argueta | Count 1 | 2019 | 87 months |
| Jose Adali Amaya Argueta | Count 1 | 2019 | 87 months |
| Jose Raul Amaya Argueta | Count 1 | 2016 | 87 months |
| Marlen Griselda Amaya Argueta | Count 1 | 2015 | 78 months |
| Rafael Antonio Pineda Santos | Count 1 | 2023 | 70 months |

With the exception of defendant Pineda Santos, who appeared before this Court for sentencing, all previous defendants were sentenced by Judge O'Grady. Additionally, of note, both Valle brothers pled guilty to drug offenses in the Southern District of Florida, where they both received

---

[1] The United States dismissed all charges against defendant Jose Manuel Lopez Morales in 2018, after learning that he passed away. Erlis Antonio Leon Castellanos, the final defendant in this case, remains at-large.

300-month sentences to run concurrently with the sentenced imposed in this District. *See* PSR ¶¶ 19, 20.

## ARGUMENT

I.      **Sentencing Law and the Guidelines Calculation.**

Although the Sentencing Guidelines are not mandatory (*United States v. Booker*, 543 U.S. 220, 245 (2005) (opinion of Breyer, J.)), the court is required to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After doing so, the court must consider the § 3553 sentencing factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to provide adequate deterrence to criminal conduct, and the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a). Ultimately, the sentence must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260-61 (opinion of Breyer, J.).

The defendant's offense of conviction carries a 10-year mandatory minimum sentence, and he is ineligible to be sentenced below the mandatory minimum pursuant to 18 U.S.C. § 3553(f) because, as he agreed in the plea agreement, (i) he possessed a firearm or other dangerous weapon, (ii) he used violence, threatened violence, or directed others to use violence, and (iii) he was an organizer or leader of others. *See* Plea Agreement, ¶ 5b, 5c, 5e (pp. 3-4); 18 U.S.C. § 3553(f)(2), (4).

The parties further agree that the defendant's base offense level is 38, based on a drug quantity of at least 450 kilograms of cocaine and that three enhancements apply: a four-level enhancement for being an organizer or leader, a two-level enhancement for possessing a dangerous weapon, and a two-level enhancement for the use or threat of violence. *See* PSR ¶¶ 91-94, 96. The defendant should receive a three-level reduction for acceptance of

5

responsibility. *See* PSR ¶¶ 100-101. As a result, the defendant's adjusted offense is 48; pursuant to the Guidelines, the total offense level is 43—the maximum allowable under the Guidelines. *See* PSR ¶¶ 98, 102. The defendant is in criminal history category I. PSR ¶ 131. The advisory Guidelines range is life.

**II.     A sentence of 312 months is warranted based on all of the § 3553(a) factors.**

As part of the defendant's plea agreement, the United States agreed to cap its sentencing recommendation at 312 months. The United States respectfully submits that term of imprisonment is warranted in this case.

As one of the highest-ranking members of the Valle DTO, the defendant's conduct was incredibly serious and warrants a lengthy period of imprisonment. His job entailed coordinating the movement of drugs, handling money, and dealing with law enforcement to ensure that the Valles were able to operate as unencumbered as possible. He is responsible for the importation of literally tons of cocaine into the country, and the harm caused by his conduct is vast and undeniable. The Court should send a strong signal that individuals who play an essential management role in an international DTO should expect to be prosecuted, convicted, and receive lengthy custodial sentences—even if that process takes years.

A 312-month sentence would not create unwarranted sentence disparities. The recommended sentence would be the third-longest sentence in this case, trailing only the 360-month sentences imposed on Miguel Arnulfo and Luis Alonso, but the defendant was among the very highest-ranking members of the DTO. Other members of the conspiracy appearing before courts in this district committed serious crimes, but their conduct was far less pervasive than the defendant's, and they had far less responsibility within the organization. In some cases, they were tasked with helping send cocaine into the United States; receiving payments for cocaine, which would be passed-on to the DTO; and/or assisting in the transportation of cocaine across

Honduras to the border with Guatemala (*i.e.* Jose Inocente Valle Valle, Delis Abner Martinez Palencia, Osman Donay Martinez Guevara, Aristides Diaz Diaz, Dirlo Nolasco Argueta, Jose Adali Amaya Argueta, Jose Raul Amaya Argueta, and Marlen Griselda Amaya Argueta). In other cases, they sold information about law enforcement to the Valles—either information gained from their employment as police officials (Wilmer Alonzo Carranza Bonilla) or information they paid to obtain themselves (Rafael Antonio Pineda Santos).[2] Those defendants' conduct, while serious, was not to the scale of the defendant's supervisory role in the organization, and therefore imposing the recommended sentence in this case would be consistent with § 3553(a)(6).

---

[2] The PSR lists a number of other defendants. Two of those defendants were prosecuted in the Southern District of Florida. *See* PSR ¶¶ 33-34. Moreover, as explained above, the investigation in this case began when authorities discovered cocaine smuggled into the United States; four of the additional defendants were part of that case, responsible for distributing within the United States cocaine imported from Honduras. *See id.* ¶¶ 35-38. (Note that defendant Lindor Delis Martinez-Guevara pled guilty to a criminal information prior to the indictment in that case.) Another defendant was responsible for sending cocaine concealed in small items such as picture frames from Honduras to the United States. *See id.* ¶ 39. These defendants are not similarly situated as the defendant, as they either were prosecuted in a different district, responsible for distribution in the United States, or, if based on Honduras, were not charged as part of the conspiracy with the Valles.

7

## CONCLUSION

For the reasons stated above, the United States respectfully recommends a sentence of 312 months of incarceration.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:    /s/
       Philip Alito
       Assistant United States Attorney
       United States Attorney's Office
       2100 Jamieson Avenue
       Alexandria, VA 22314
       Telephone:   703-299-3700
       Fax:   703-299-3980
       Email:   Philip.Alito@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on November 27, 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to counsel of record in this case.

                                                   /s/
                                      Philip Alito
                                      Assistant United States Attorney